IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | | |
|---|---|---|
| Dr. Norma Corrales Martin, | ) | |
| | ) | C/A No. 8:08-354-GRA |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | (Written Opinion) |
| Clemson University, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a review of Magistrate Judge William M. Catoe's Report and Recommendation made in accordance with 28 U.S.C. § 636(b)(1)(A) and Local Rule 73.02(B)(2)(g), D.S.C., and filed July 23, 2009. Plaintiff originally filed this action on February 7, 2007, and filed an Amended Complaint with leave from this Court on April 15, 2009, adding an otherwise time-barred claim under Title VII of the Civil Rights Act of 1964. Plaintiff alleges that her employer, Defendant Clemson University ("Clemson"), discriminated against her because or her gender, race, and national origin. Plaintiff specifically alleges the following in her Amended Complaint:

    Count I - race and sex discrimination in violation of 42 U.S.C. §§ 1981, 1983, 1985, and 1986;

    Count II - violation of the Equal Pay Act;

    Count III - violation of Title IX of the Education Amendments of 1972 ;

    Count IV - violation of Title VI of the Civil Rights Act of 1964;

Count V - defamation;

Count VI - breach of contract;

Count VII - tortious interference with contractual relations;
Count VIII - fraud;

Count IX - civil conspiracy; and

Count X - Title VII.

Defendant Clemson moved to dismiss certain claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on December 4, 2008. Although Defendant's Partial Motion to Dismiss does not address Count X, the new Title VII claim, Defendant acknowledges that the claim is not barred by the Eleventh Amendment. The magistrate recommends granting Defendant's Partial Motion to Dismiss and dismissing Counts I, III, IV, V, VI, VII, VIII, and IX. For the reasons stated herein, notwithstanding Plaintiff's objections, this Court adopts the magistrate's Report and Recommendation in its entirety and GRANTS Defendant's Partial Motion to Dismiss.

## **Standard of Review**

The magistrate makes only a recommendation to this Court. The recommendation has no presumptive weight, and responsibility for making a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). This Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made, and this Court may "accept, reject, or modify, in whole or in part, the findings or recommendations

made by the magistrate." 28 U.S.C. § 636(b)(1). This Court may also "receive further evidence or recommit the matter to the magistrate with instructions." *Id.*

In order for objections to be considered by a United States District Judge, the objections must specifically identify the portions of the Report and Recommendation to which the party objects and the basis for the objections. Fed. R. Civ. P. 72(b); *see Wright v. Collins*, 766 F.2d 841, 845-47 nn.1-3 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91,94 n.4 (4th Cir. 1984).

## Discussion

The Court first reiterates that it may only consider non-conclusory objections to the Report and Recommendation that direct this Court to a specific error. Many of Plaintiff's objections appear to simply rehash her previous arguments before the magistrate. To the extent Plaintiff raises cognizable and specific objections to the magistrate's Report and Recommendation, they relate to the magistrate's findings that Clemson is an arm of the state for purposes of Eleventh Amendment immunity, and that Plaintiff's claims under Title VI and Title IX are barred by the applicable statute of limitations. For the reasons discussed below, Plaintiff's objections are without merit and overruled.

A. Clemson's Status as an Arm of the State

Plaintiff objects to the magistrate's finding that Clemson is an arm of the state shielded by the Eleventh Amendment. Plaintiff makes numerous objections regarding this finding. As explained below, the magistrate applied sound legal principles and was

correct in his analysis that Clemson is an arm of the state and entitled to Eleventh Amendment immunity for purposes of Counts I, V, VI, VII, VIII, and IX of Plaintiff's complaint.

    i. Clemson's Status as a Municipal Corporation

Plaintiff argues that the magistrate's Report and Recommendation "fails to consider the fact that" Clemson is a municipal corporation with a separate and distinct identity from the state. (Obj. of Pl. at 1.) Plaintiff is incorrect. The magistrate discussed the issue of whether Clemson is a municipal corporation with a separate identity at length in his Report and Recommendation. (*See* Mag. Rep. & Recomm. at 9-11.) Further, the mere fact that South Carolina's statutory authority refers to Clemson as a municipal corporation is not enough to determine its status as an arm of the state. *Clemson Univ, v. W.R. Grace & Co.*, C.A. No. 2:86-2055-2, 1991 WL 112319, at *4 (D.S.C. 1991). *See also Ram Ditta v. Md. Nat'l Capital Park & Planning Comm'n*, 822 F.2d 456, 458 n.5 (4th Cir. 1987) (holding that although a federal court may consider how an entity is treated under state law, the question of whether an agency is an arm of the state for purposes of Eleventh Amendment immunity is a question of federal, not state, law (citing *Blake v. Kline*, 612 F.2d 718, 722 (6th Cir. 1979))).

    ii. Supreme Court Precedence Regarding Clemson's Immunity

Plaintiff alleges that under Supreme Court precedence, Clemson is not entitled to sovereign immunity. Plaintiff's argument relies almost exclusively on a 1921

Supreme Court case which originated in a South Carolina state court. *Hopkins v. Clemson Agr. Coll. of S.C.*, 221 U.S. 636, 637 (1911). In *Hopkins*, the plaintiff sought damages from Clemson, then known as Clemson Agricultural College of South Carolina, alleging that a dyke constructed by the college caused damage to neighboring property and constituted a taking of plaintiff's property. *Id*. The *Hopkins* Court overruled the South Carolina Supreme Court and held that Clemson was amenable to suit for taking private property without just compensation. *Id.* at 648-49.

Plaintiff reads the holding in *Hopkins* too broadly. The Supreme Court did not conclusively determine whether Clemson was an arm of the state for Eleventh Amendment purposes. It held that a public corporation like Clemson cannot nullify the Constitution's Just Compensation Clause by employing the doctrine of sovereign immunity in state court. *See id* at 648. *See also Chicago Burlington & Quincey R.R. Co. v. Chicago*, 166 U.S. 226, 233 (1897) (holding that the Fifth Amendment's Just Compensation Clause is applicable to the states through the Fourteenth Amendment's due process clause). Accordingly, because *Hopkins* did not definitively determine Clemson's status as an arm of the state under the Eleventh Amendment, the magistrate correctly applied the four-factor analysis prescribed by the Fourth Circuit Court of Appeals in *Ram Ditta.*

    iii. Balancing the *Ram Ditta* Factors

Plaintiff claims the magistrate failed to properly assess and weigh the relevant factors in determining that Clemson is an arm of the state. In *Ram Ditta*, the Fourth

Circuit outlined four factors courts should consider in determining whether an entity is an arm of the state. *Ram Ditta*, 822 F.2d at 457. First, and most importantly, is whether the state treasury will be responsible for paying any judgment that might be awarded. If the answer to this question is yes, the inquiry is at an end because "if the 'State Treasury will be called upon to pay a judgment against a government entity . . . consideration of any other factor becomes unnecessary' and the entity will be immune." *Kitchen v. Upshaw*, 286 F.3d 179, 184 (4th Cir. 2002) (quoting *Cash v. Granville County Bd. of Educ.*, 242 F.3d 219, 223 (4th Cir. 2001)). A negative answer to this question, though, does not necessarily mean that Eleventh Amendment immunity does not apply. *Id.* Instead, "if the state's treasury will not be used to satisfy a judgment, [the court] still must determine if the relationship of the entity with the state is close enough to implicate the 'dignity of the State as a sovereign.'" *Id.* (quoting *Cash*, 242 F.3d at 224).

Determining the closeness of the relationship between the entity and the state involves consideration of the remaining three *Ram Ditta* factors: the degree of control exercised by the state over the entity; whether the entity deals with statewide or local concerns; and how state law treats the entity. *Kitchen*, 286 F.3d at 184. Plaintiff claims that the magistrate misapplied applicable case law and erred in balancing each factor in favor of Clemson.

    a. Reliance on *W.R. Grace & Co.*

As an initial matter, Plaintiff claims that the magistrate erred in relying on the

Honorable C. Weston Houck's analysis in *Clemson University v. W.R. Grace & Co.*, C.A. No. 2:86-2055-2, 1991 WL 112319 (D.S.C. June 18, 1991). In *W.R. Grace & Co.*, Judge Houck, then United States District Judge,[1] after applying the four-factor *Ram Ditta* analysis, concluded that Clemson University was an arm of the State of South Carolina. Plaintiff contends the magistrate's reliance on this case is misplaced because the opinion is unpublished, non-precedential, and the underlying facts were distinct from the case at bar. Although Plaintiff is correct that unpublished opinions do not constitute binding precedence, unpublished opinions can be persuasive when they address questions currently before the Court. Although Plaintiff contends that *W.R. Grace & Co.* is factually distinct, this Court finds Judge Houck's analysis to be highly persuasive because it addresses issues currently before the Court.

As the magistrate correctly explained, although the issue before Judge Houck was whether Clemson is a "citizen" within the meaning of 28 U.S.C. § 1332 such that the University could invoke diversity jurisdiction and sue a nonresident corporation in federal court, the inquiry that must be undertaken to answer that question is, as Judge Houck noted, essentially the same as the inquiry that must be undertaken to resolve whether an entity is an "arm of the state" for purposes of the Eleventh Amendment. *See W.R. Grace & Co.*, 1991 WL 112319, at *1 (noting that the analysis "is virtually identical"); *see also Md. Stadium Auth. v. Ellerbe Becket, Inc.*, 407 F.3d 255, 260 (4th Cir. 2005) ("In determining whether a public entity is an alter ego of the state,

---

[1] Judge Houck has since taken senior status.

and therefore, not a 'citizen' under § 1332, courts have generally looked to the standards announced in cases addressing whether governmental entities are entitled to Eleventh Amendment immunity as an arm of the state.").

Additionally, other federal courts in this District have relied on *W.R. Grace & Co.* to hold that Clemson is an arm of the state and entitled to Eleventh Amendment immunity. *See Larebo v. Clemson Univ.*, No. 8:97-1935, at 10-11 (D.S.C. 1998), *aff'd on other grounds*, 175 F.3d 1014 (4th Cir. 1999). *See also Johnson v. S.C. State Univ.*, No. 5:09-1421-MBS, 2009 WL 1834488, *4 (D.S.C. June 24, 2009) (finding that the plaintiff's non-discrimination claims were barred by the Eleventh Amendment as South Carolina State University is an alter ego of the state).

  b. *Ram Ditta* Factor One: State Treasury's Liability

Plaintiff asserts that because Clemson is insured through the South Carolina Budget and Control Board's Insurance Reserve Fund ("IRF"), the state treasury will not be responsible for paying any potential judgment. Therefore, Plaintiff contends that the first factor weighs against Clemson being an arm of the state and this factor should be dispositive of the Eleventh Amendment issue.

The magistrate correctly explained in great detail why, in spite of the existence of insurance though the IRF, the state treasury is still be potentially liable or would be otherwise negatively impacted by an adverse judgment against Clemson. (Mag. Rep. & Recomm. at 6-8.) The South Carolina Tort Claims Act ("SCTCA") specifically defines Clemson (and all other state-supported colleges and universities) as the "State" and

a "state agency." *See* S.C. Code Ann. § 15-78-30(a) and (e). That Act makes the state and its agencies liable in tort and provides for recovery of damages up to a maximum of $300,000 per occurrence on state law tort claims. *Id*. § 15-78-120(a)(1). The state, therefore, would clearly be liable for any judgment for damages entered against Clemson on one or more of the plaintiff's tort claims.

The fact that Clemson has insurance that would cover some or all of any adverse judgment for money damages that might be entered against it does not affect its entitlement to Eleventh Amendment immunity. *Regents of the Univ. of Calif. v. Doe*, 519 U.S. 425, 431 (1997). Further, any part of a judgment not covered by the tort liability policy issued to Clemson by the Budget and Control Board would have to be paid by the state or Clemson from public funds, thereby negatively impacting the state treasury. *See Ristow v. S.C. Ports Auth.*, 58 F.3d 1051, 1054-55 (4th Cir. 1995).

Although Plaintiff cites several cases to support her proposition that Eleventh Amendment immunity is inapplicable because the IRF would potentially cover the amount of any adverse judgement, the cases are distinguishable. The cases Plaintiff cites stand for the proposition that a *local* government may not invoke Eleventh Amendment immunity simply because a state-controlled insurance fund would ultimately pay the judgment. *See Kitchen*, 286 F.3d at 183-84; *Green v. Clarendon County Sch. Dist. Three*, 923 F. Supp. 829, 849-50 (D.S.C. 1996); *Nelson v. Strawn*, 897 F. Supp. 252, 255-56 (D.S.C.1995), *aff'd in part and vacated in part*, 78 F.3d

579 (4th Cir.1996). Moreover, even if this Court were to find that the first factor weighs against Clemson's status as an arm of the state, such a finding would not be dispositive. *Kitchen*, 286 F.3d at 184. (quoting *Cash*, 242 F.3d at 224). Here, as the magistrate judge correctly held, the other three *Ram Ditta* factors also weigh in favor of Clemson being an arm of the state.

c. *Ram Ditta* Factor Two: Degree of Control Exercised by the State

Plaintiff argues the magistrate erred in determining Clemson does not exercise a significant degree of autonomy. Specifically, Plaintiff compares the state's heavy involvement in selecting trustees for the University of South Carolina, which she presumably agrees is an arm of the state, with the state's more limited involvement in selecting trustees for Clemson. Ironically, Plaintiff also argues that the magistrate incorrectly relied on *Commonwealth of Va. v. Reinhard*, 568 F.3d 110, 124 (4th Cir. 2009), because each state university "must be evaluated in light of its unique characteristics". (Obj. of Pl. at 6.)

Plaintiff correctly points out that courts must examine each state university independently. However, the magistrate cited *Reinhard* not for purposes of comparing Clemson with public universities in Virginia, but for the proposition that mere "features of independence" do not evidence "a significant degree of autonomy from the state." *Ram Ditta*, 822 F.2d at 457-58. *See also Reinhard*, 568 F.3d at 124. In her objections, Plaintiff points out a few features of Clemson's independence: Clemson has previously argued that it was independent; the percentage of the funds allocated by

the state has decreased since the mid-1980s; and the majority of the Board of Trustees is appointed according to the will of Thomas Clemson.

The magistrate correctly addressed each of these issues, and weighed them against numerous other factors, in determining that Clemson does not exercise a significant degree of autonomy. (*See* Mag. Rep. & Recomm. at 9-10.) For example, Clemson is required to remit to the State Treasurer for deposit in the State's General Fund all tuition payments that it receives; Clemson must prepare an annual budget for submission to the General Assembly through the South Carolina Commission on Higher Education; Clemson's financial records are subject to annual audit by the State Auditor's office; Clemson's Board of Trustees must report annually to the General Assembly on monies received and expended; and Clemson may issue institution bonds and auxiliary and athletic facilities revenue bonds only with the consent of the State Budget and Control Board and only to the extent permitted by the General Assembly. *See* S.C. Code Ann. §§ 11-7-20; 59-103-35; 59-107-30 through -50; 59-119-40; 59-119-740; 59-119-940; and 59-147-30.

      d. *Ram Ditta* Factors Three and Four: Whether the Entity Deals with Statewide or Local Concerns and How the Entity is Treated by State Law

Plaintiff does not make any objection to the magistrate's finding that Clemson is involved with statewide concerns. Accordingly, this Court adopts the magistrate's conclusion that higher education is, by definition, a matter of statewide concern. *See Md. Stadium Auth*., 407 F.3d at 265. However, Plaintiff claims the magistrate erred

in determining that Clemson is treated as an arm of the state under South Carolina law. Plaintiff makes two cognizable allegations of error.

First, Plaintiff alleges that the magistrate failed to consider rulings of the South Carolina Supreme Court recognizing Clemson's autonomy from the state. Plaintiff cites a statement from a 1950 South Carolina Supreme Court case that Clemson is not "wholly owned and controlled by the State . . . ." *Rice Hope Plantation v. S.C. Public Service Auth.*, 59 S.E.2d 132 (S.C. 1950), *overruled on other grounds*, *McCall by Andrews v. Batson*, 329 S.E.2d 741 (S.C. 1985). However, the relevant question for Eleventh Amendment purposes is not whether the entity is "wholly owned and controlled by the State" but whether, based on application of the *Ram Ditta* factors, it is effectively the alter ego of the state. Most state universities are not "wholly owned and controlled by the State" but have features of independence. Despite these features of independence, the Fourth Circuit has still "[a]lmost universally" held that public state universities are arms fo the state for Eleventh Amendment purposes. *Md. Stadium Auth*, 407 F.3d at 262-63.

Furthermore, as the magistrate correctly pointed out, South Carolina law regards Clemson as a state agency or instrumentality. *See, e.g.*, S.C. Code Ann. § 15-78-30(e) ("'State' means the State of South Carolina and any of its officers, agencies, authorities, departments, commissions, boards, divisions, instrumentalities. . . including state-supported . . . universities . . . ."). (*See also* Mag. Rep. & Recomm. at 10.)

Second, Plaintiff argues that the magistrate failed to consider that Clemson may issue revenue bonds as authorized by Clemson's Board of Trustees. Like other state colleges and universities in South Carolina, Clemson may issue revenue bonds, as authorized by its Board of Trustees, that are not binding on the state. This is simply a feature of independence that, when weighed against the numerous features of state control already discussed, does not make Clemson any less an arm of the state for Eleventh Amendment immunity purposes.

B.    Statute of Limitations Under Title VI and Title IX

Plaintiff objects to the magistrate's finding that the statute of limitations has expired on Plaintiff's claims under Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. §§ 1681-1688, and Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d.[2] Plaintiff alleges that the magistrate ignored Fourth Circuit precedent and Local Rule 32.1 in applying a one-year statute of limitations for personal injury actions, and that the magistrate erred in determining that the statute of limitations began to run in May 2005. As explained below, the magistrate applied sound legal principles and was correct in his analysis that Plaintiff's Title VI and Title IX claims were subject to a one-year statute of limitations and that Plaintiff filed her

---

[2] The Supreme Court and lower courts have emphasized time and again that Titles VI and IX are to be construed and enforced in like manner. *See, e.g.*, *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998); *Preston v. Commonwealth of Va. ex rel. New River Comm. College*, 31 F.3d 203, 206 n.2 (4th Cir. 1994) ("Congress intended that Title IX be interpreted and enforced in the same manner as Title VI of the Civil Rights Act of 1964 . . . ."). Both Plaintiff and Defendant agree with this proposition. *(See* Def. Mot. to Dismiss 5-6; Pl.'s Opp'n Mot. to Dismiss 3.)

claims outside the limitations period.

  i.  Applicable Statute of Limitations

Plaintiff first argues that the magistrate ran afoul of Fourth Circuit Local Rule 32.1 by relying on an unpublished opinion. Plaintiff points to the following language of Rule 32.1:

> Citation of this Court's unpublished dispositions issued prior to January 1, 2007, in briefs and oral arguments in this Court and in the district courts within this Circuit is disfavored, except for the purpose of establishing res judicata, estoppel, or the law of the case.

4th Cir. R. 32.1. However, Plaintiff fails to refer to the second paragraph of the rule, which states that a party may cite "an unpublished disposition of this Court [if it has] precedential value in relation to a material issue in a case and that there is no published opinion that would serve as well . . . ." *Id.*

Here, the magistrate relied on *Moore v. Greenwood School District No. 52*, 195 Fed. App'x 140 (4th Cir. 2006). *Moore* dealt specifically with the applicable statute of limitations for claims under Title IX that arose in South Carolina. *Id.* at 143. This is critical because, as the magistrate correctly instructed, under Fourth Circuit and Supreme Court precedence "federal courts should follow the [most analogous] limitations period set by the state in which the district court sits." *Wolsky v. Med. Coll. of Hampton Roads*, 1 F.3d 222, 224 (4th Cir. 1993). *See also Wilson v. Garcia*, 471 U.S. 261, 268 (1985). Although unpublished, *Moore* has high precedential value because it is the only Fourth Circuit case specifically addressing the applicable statute of limitations for Title IX employment discrimination claims arising in South Carolina.

Additionally, this Court issued the initial ruling in *Moore*, which the Fourth Circuit affirmed.

Plaintiff's remaining objections with regard to the applicable statute of limitations appear to restate her initial argument before the magistrate: that *Franks v. Ross*, 313 F.3d 180 (4th Cir. 2002), requires this Court to apply the three-year personal injury statute of limitations. In *Franks*, which arose in North Carolina, the court found that the North Carolina personal injury statute was the most analogous to the plaintiff's Title VI claim. *Id.* at 194. In construing *Franks* in accordance with the Fourth Circuit in *Wolsky* and the Supreme Court in *Wilson*, this Court must look to the South Carolina statutes to determine the statute most analogous to Plaintiff's claims under Title VI and Title IX. The South Carolina Human Affairs Law ("HAL") proscribes not only discrimination in employment because of sex but also because of race, color and national origin – the same categories addressed by Title VI and Title IX. *See* S.C. Code Ann. § 1-13-80(A).

As this Court previously found in *Moore*, since the HAL makes it "an unlawful employment practice for an employer 'to fail or refuse to hire, bar, or discharge from employment or otherwise discriminate against an individual with respect to the individual's compensation or terms, conditions, or privileges of employment because of the individual's . . . sex, age, national origin, or disability'" and since "the same standard for evaluating claims under the State Human Affairs Law is used for evaluating claims under federal anti-discrimination laws," Plaintiff's Title VI and Title

IX claims for employment discrimination are "more closely analogous" to a claim under the HAL than to a common law claim for personal injury. *See Moore*, 195 Fed. App'x at 143. Therefore, the magistrate correctly held that the HAL's one-year statute of limitations should be applied to Plaintiff's Title VI and Title IX claims.

    ii.  When the Statute of Limitations Began to Run

Plaintiff objects to the magistrate's finding that she untimely filed her claim. Plaintiff filed this lawsuit on February 7, 2007. As she argued before the magistrate, Plaintiff contends that the statute of limitations began to run in March 2007, when Clemson issued its final ruling on her grievance appeal, and not in April 2005 when she was denied tenure. The magistrate correctly held that the statute of limitations began to run when Clemson denied her tenure.

Under similar facts, the Supreme Court has ruled "that the limitations period commenced to run when the tenure decision was made and [the plaintiff] was notified." *Del. State Coll. v. Ricks*, 449 U.S. 250, 259 (1980). "That is so even though one of the effects of the denial of tenure . . . did not occur until later." *Id*. at 258. Here, all Plaintiff's factual allegations center around the denial of tenure, which occurred in 2005. (Pl.'s Am. Compl. ¶¶ 31-54.) The fact that she subsequently appealed that denial of tenure did not restart the clock. The Seventh Circuit Court of Appeals considered a similar situation in *Lever v. Northwestern University*, 979 F.2d 552 (7th Cir. 1992). The court ruled as follows:

> An employer's refusal to undo a discriminatory decision is not a fresh act of discrimination. If it were, then an employee could avoid the [statute of

> limitations] by filing a series of appeals or fresh requests; . . . adverse decisions on appeals do not re-start the time for filing a charge. . . .

*Id.* at 556 (citations omitted). To the extent Plaintiff attempts to argue that the statute of limitations should begin to run in March 2007 because she was required to exhaust her administrative remedies before filing suit, Title VI and Title IX do not contain this requirement. *See Cannon v. Univ. of Chicago*, 441 U.S. 677, 706-08 n.41 (1979) (noting that exhaustion of Title IX administrative remedies is not required before one files a private action, and that Title IX and Title VI are similarly interpreted and applied). Accordingly, the magistrate correctly ruled that Plaintiff filed her Title VI and Title IX claims outside the applicable one-year statute of limitations.

## **Conclusion**

After a review of the magistrate's Report and Recommendation, this Court finds that the magistrate based his report upon the proper law and applied sound legal principles to the facts of this case. Accordingly, the Report and Recommendation is accepted and adopted in its entirety.

IT IS, THEREFORE, ORDERED that Defendant's partial Motion to Dismiss is GRANTED and Plaintiff's Complaint is DISMISSED as to Counts I, III, IV, V, VI, VII, VIII, and IX.

IT IS SO ORDERED.

**[Signature block on next page.]**

_____
G. ROSS ANDERSON, JR.
UNITED STATES DISTRICT JUDGE

August 28 , 2009

## NOTICE OF RIGHT TO APPEAL

Plaintiff is hereby notified that she has the right to appeal this Order within thirty (30) days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure. Failure to meet this deadline, as modified within Rule 4, will waive the right to appeal.